Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>GARNET CAPITAL ADVISORS, LLC; PARLIAMENT CAPITAL MANAGEMENT LLC; **PR RECOVERY AND DEVELOPMENT, REO, LLC**; **PR RECOVERY AND DEVELOPMENT, JV, LLC**<br><br>Peticionario | TA2025CE00337 | *CERTIORARI*<br>Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2019CV11697 (603)<br><br>Sobre: Sentencia Declaratoria; Nulidad de Contrato; Restitución de Prestación; Daños; Cumplimento Específico; Resolución de Contrato; Incumplimiento de Contrato; Mala Fe Contractual; Interferencia Torticera; Dolo; Actos Propios |

Panel integrado por su presidente, el juez Bonilla Ortiz, la jueza Álvarez Esnard y la jueza Martínez Cordero.[1]

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 8 de octubre de 2025.

Comparece ante nos PR Recovery and Development; REO, LLC y Recovery and Development, JV, LLC ("conjuntamente, PR Recovery" o "los Peticionarios"), mediante *Recurso de Certiorari* presentado el 22 de agosto de 2025. Nos solicitan la revocación de la *Orden* emitida el 25 de junio de 2025, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el

---

[1] Véase Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Olga E. Birriel Cardona.

foro primario le impuso a los Peticionarios una sanción económica de nueve mil dólares ($9,000.00) por incumplir con la *Orden Enmendada* emitida por el foro a quo el 30 de abril de 2025.

Por los fundamentos que expondremos a continuación, **denegamos** el presente recurso.

## I.

Surge del expediente que, el 3 de marzo de 2020, el Banco de Desarrollo Económico para Puerto Rico ("Banco" o "Recurrido") presentó *Demanda Enmendada Jurada* sobre sentencia declaratoria, nulidad de contrato, restitución de prestación y daños contra Garnet Capital Advisors, LLC; Parliament Capital Management, LLC y PR Recovery.[2] En esencia, el Recurrido solicitó, entre otros remedios, la nulidad de la venta de una cartera de préstamos a los Peticionarios y, consecuentemente, ordenar a PR Recovery a devolver dicha cartera de préstamos o, en su defecto, pagar una suma no menor al valor del principal no pagado al momento de la transacción entre las partes.

Tras varias incidencias procesales, el 3 de octubre de 2024 y el 13 de noviembre del mismo año, se llevaron a cabo dos (2) vistas transaccionales.[3] Particularmente, en la vista llevada a cabo el 13 de noviembre de 2024, las partes acordaron un plan de trabajo y calendarizaron algunas fechas para la continuación de los procedimientos.[4] Posteriormente, el 8 de abril de 2025, el Banco presentó *Moción Solicitando Inspección de Documentos para Someter Contraoferta Transaccional.*[5] Mediante esta, el Recurrido explicó que las partes se encontraban en conversaciones transaccionales y que el 8 de noviembre de 2024, habían recibido una oferta transaccional por parte de PR Recovery. Adujo que en la vista celebrada el 13 de

---

[2] Véase, SUMAC TPI, Entrada 7. La *Demanda* original que inició este pleito se presentó el 7 de noviembre de 2019, véase, SUMAC TPI, Entrada 1.
[3] Véase las minutas de las aludidas vistas, SUMAC TPI, Entradas 448 y 452.
[4] Véase, SUMAC TPI, Entrada 452.
[5] Véase, SUMAC TPI, Entrada 469.

noviembre de 2024, el foro primario, en reconocimiento del cambio de gobierno y de la composición de la Junta de Directores del Banco, ordenó a que la representación legal de los Peticionarios, notificara a la nueva Junta del Banco la aludida oferta. Alegó que, tras constituirse la nueva composición gerencial del Banco, esta solicitó que, con miras a comunicar una respuesta informada y responsable sobre el asunto, necesitaba evaluar el estado actual de la cartera de préstamos en controversia. Por consiguiente, solicitó que se ordenara a PR Recovery a suministrar información relacionada al comportamiento de los préstamos para llevar a cabo una evaluación con el fin de lograr una transacción.

En respuesta a esta solicitud, el 28 de abril de 2025, PR Recovery presentó *Oposición a Moción Solicitando Inspección de Documentos*.[6] En esta, arguyó que la solicitud del Banco no era un mero requerimiento para inspeccionar documentos, sino que en realidad lo que se le estaría solicitando a los Peticionarios sería compilar información de más de once mil (11,000) préstamos para una entrega ordenada y, a su vez, obtener información confidencial de negocio. Agregó que conocer el estado actual de la cartera de préstamo en nada ayudaría al Banco a evaluar la oferta transaccional ofrecida o a formular una contraoferta.

Tras llevarse a cabo una vista de estado de procedimientos, el 30 de abril de 2025, el foro primario emitió *Orden Enmendada*.[7] En esta, el foro *a quo* dispuso lo siguiente:

> Se le ordena a las partes demandadas (PR Recovery and Development, REO, LLC y PR Recovery and Development, JV, LLC) que, en o antes del 5 de mayo de 2025, entreguen la información relacionada al estatus o comportamiento de la cartera de préstamos objeto de este litigio, la cual la componen el Pool 1a, Pool 1b, Pool 2 y Pool 3, o permitan el acceso e inspección de dicha cartera de préstamos. La parte demandante y las partes demandadas (PR Recovery and Development, REO, LLC

---

[6] Véase, SUMAC TPI, Entrada 471.
[7] Véase, SUMAC TPI, Entrada 474. La aludida *Orden Enmendada* se enmendó con el único propósito de incluir la firma digital del juez.

y PR Recovery and Development, JV, LLC) coordinarán, de buena fe y sin ningún tipo de traba, la forma y manera en que la parte demandante tendrá acceso a la información relacionada al estatus o comportamiento de la cartera de préstamos (cobro, planes de pago e intereses). Se ordena que esta información sea manejada solo por los representantes que las partes designen y sus abogados.

Se apercibe que el incumplimiento con esta orden conllevará sanciones al amparo de la Regla 37.7 de las Reglas de Procedimiento Civil de 2009.[8]

En desacuerdo con este dictamen, el 2 de mayo de 2025, los Peticionarios presentaron *Urgente Moción de Reconsideración.*[9] En esta, esbozaron que la *Orden Enmendada* fue emitida mediando un craso abuso de discreción. Argumentaron que, igualmente, la determinación del foro *a quo* no siguió los propósitos que orientan el descubrimiento de prueba. Finalmente, puntualizó que el Banco incumplió con los requisitos para solicitar una orden de producción al foro primario. Ese mismo día, el foro *a quo* declaró *Sin Lugar* la reconsideración instada por los Peticionarios.[10]

Inconforme aun, el 5 de mayo de 2025, los Peticionarios presentaron un recurso de *Certiorari* ante este Tribunal de Apelaciones.[11] En concreto, adujeron que el foro primario incidió al ordenar la producción de información y documentación de sobre once mil (11,000) préstamos en un término de dos (2) días. Examinado el recurso, el 30 de mayo de 2025, esta Curia emitió *Resolución* mediante la cual denegó el auto de *Certiorari.*

Cabe destacar que, el 19 de mayo de 2025, el foro primario aclaró que la presentación del recurso de *certiorari* no paralizó los procedimientos y de igual forma determinó lo siguiente:

Reitera su orden enmendada del 30 abril de 2025 e impone una sanción económica de $500 diarios a PR

---

[8] *Íd.*
[9] Véase, SUMAC TPI, Entrada 475.
[10] Véase, SUMAC TPI, Entrada 477.
[11] Cabe destacar que PR Recovery acompañó su petición de *Certiorari* con un *Moción en Auxilio de Jurisdicción.* A esos fines, solicitó que se paralizaran los procedimientos hasta tanto esta *Curia* dispusiera del recurso de epígrafe. El 7 de mayo de 2025, este Tribunal de Apelaciones emitió *Resolución,* en la que declaró *No Ha Lugar* la solicitud en auxilio de jurisdicción.

Recovery and Development REO, LLC y a PR Recovery and Development JV, LLC por cada día que no cumplan con la orden enmendada del 30 de abril de 2025, incluyendo días feriados y fines de semana. Véase Regla 34.3(b)(6), 37.7 y 44.2 de las de Procedimiento Civil de 2009.

La imposición de esta sanción económica comenzará a partir de la fecha de notificación de esta orden. Se detendrá esta sanción económica tan pronto se acredite que, a satisfacción del tribunal, se ha cumplido con esta orden. Acreditado el cumplimiento con la orden enmendada del 30 de abril de 2025, se ordenará el pago de la sanción económica acumulada hasta ese momento, si alguna, en el término de 10 días.

Se advierte que del tribunal entender que se continua sin cumplir con la orden enmendada del 30 de abril de 2025, a pesar de la sanción aquí impuesta, o con esta orden, emitirá cualquier orden adicional.

Secretaría: Notifique directamente a PR Recovery and Development REO, LLC y a PR Recovery and Development JV, LLC esta orden.

El tribunal señala como fecha límite para cumplir con esta orden, y la orden enmendada, el 3 de junio de 2025. No se justifica en este caso un término más extenso que el aquí otorgado.[12]

Así las cosas, el 3 de junio de 2025, los Peticionarios presentaron *Moción en Cumplimiento de Orden Enmendada*.[13] En esta, informaron que remitieron a la representación legal del Banco la información solicitada. Ante este cuadro, el 4 de junio de 2025, notificada al día siguiente, el foro primario emitió *Orden* mediante la cual expuso lo siguiente:

**Parte demandante**: exponga su posición sobre lo informado por las partes demandadas (PR RECOVERY AND DEVELOPMENT REO, LLC y PR RECOVERY AND DEVELOPMENT, JV, LLC). Tenga hasta el 9 de junio de 2025.

Luego de terminar de atender el cumplimiento con la orden enmendada del 30 de abril de 2025, se atenderá por el tribunal el cumplimiento con la orden del 19 de mayo de 2025, notificada el 21 de mayo de 2025 (entrada número [492] de SUMAC).[14]

---

[12] Véase, SUMAC TPI, Entrada 492.
[13] Véase, SUMAC TPI, Entrada 504.
[14] Véase, SUMAC TPI, Entrada 507.

Posteriormente, el 9 de junio de 2025, notificada al día siguiente, el foro primario emitió la siguiente *Orden*:

Parte demandante: para que este tribunal pueda dar por cumplida la orden enmendada del 30 de abril de 2025, es necesario que informe sin ambages, y de manera directa y categórica, que recibió de PR Recovery and Development REO, LLC y PR Recovery and Development JV, LLC la información, según ordenada y descrita por este tribunal. Se le ordena que informe, en o antes del 23 de junio de 2025 a las 5:00 p. m., sobre si la información entregada por PR Recovery and Development REO, LLC y PR Recovery and Development JV, LLC cumplió con lo ordenado por este tribunal.[15]

Oportunamente, el 23 de junio de 2025, el Banco presentó *Moción en Cumplimiento de Orden [511]*.[16] En esta explicó que por entender **que la información suplementada el 3 de junio de 2025 era insuficiente**, funcionarios de la gerencia del Banco y ejecutivos de PR Discovery sostuvieron una reunión el 16 de junio de 2025 en la que estos últimos se comprometieron a suplementar la información provista. Argumentaron que, el 23 de junio de 2025, los directivos del Banco acababan de recibir la información prometida por lo cual solicitaron un término de veinte (20) días para evaluar la misma.

Así pues, el foro primario dictó *Orden* en la cual dispuso lo siguiente:

Las partes demandadas PR Recovery and Development REO, LLC y PR Recovery and Development JV, LLC, pagarán, en o antes de 7 de julio de 2025, en la unidad de cuentas de este tribunal, una sanción económica por la cantidad de $9,000 por el periodo de tiempo que estuvieron en incumplimiento con la orden enmendada del 30 de abril de 2025.

Esta sanción es a razón de $500 diarios, incluyendo días feriados y fines de semana, y se impone desde el 22 de mayo de 2025 hasta el 9 de junio de 2025 (18 días, contando como el día número uno el 23 de mayo de 2025 y contando como el día numero 18 el 9 de junio de 2025), según orden del 19 de mayo de 2025 registrada en la entrada número [492] de SUMAC. La orden enmendada del 30 de abril de 2025 desde su emisión siempre estuvo en toda fuerza y vigor, ya que, a pesar de dos solicitud de auxilio de jurisdicción, los

---

[15] Véase, SUMAC TPI, Entrada 511.
[16] Véase, SUMAC TPI, Entrada 519.

procesos en este tribunal no fueron suspendidos y, como cuestión de derecho, tampoco se suspendieron por la presentación de un recurso de certiorari en el Tribunal de Apelaciones por las partes demandadas PR Recovery and Development REO, LLC y PR Recovery and Development JV, LLC cuando fueron en revisión de la orden enmendada del 30 de abril de 2025.[17]

Inconforme con esta determinación, el 7 de julio de 2025, los Peticionarios presentaron *Moción de Reconsideración.*[18]  En esta, adujeron que, de manera oportuna, el 3 de junio de 2025, proveyeron la información ordenada por el foro primario sobre las carteras de préstamos.  No obstante, expusieron que, el 16 de junio de 2023, durante una reunión sostenida por las partes para discutir la información producida por PR Recovery, el Banco, por primera vez, señaló que la información provista "no era suficiente para su análisis e indicó que necesitaba información más detallada sobre los préstamos en cartera, los cobros de cada préstamo individual y los gastos de recobro" ello, a los fines de continuar su evaluación de la oferta transaccional cursada por los Peticionarios en noviembre de 2024.[19] De eta manera, los Peticionarios reiteraron que la orden de producción de documentos fue debidamente cumplida.

Evaluado este escrito, el 23 de julio de 2025, el foro primario emitió *Orden.*[20]  Por virtud de esta, el foro *a quo* realizó un recuento procesal de ciertas incidencias del caso y, consecuentemente, declaró *Sin Lugar* la moción de reconsideración instada por PR Recovery.  En vista de lo anterior, el foro *a quo* ordenó el pago de la sanción económica impuesta a PR Recovery por la cantidad de nueve mil dólares ($9,000.00) en o antes del 31 de julio de 2025.

A tenor con este mandato, el 30 de julio de 2025, los Peticionarios presentaron *Moción en Cumplimiento de Orden Sobre Consignación de Fondos.*[21]  En esta, sin renunciar a su derecho de

---

[17] Véase, SUMAC TPI, Entrada 520.
[18] Véase, SUMAC TPI, Entrada 527.
[19] *Íd.*, pág. 3.
[20] Véase, SUMAC TPI, Entrada 541.
[21] Véase, SUMAC TPI, Entrada 552.

agotar los remedios disponibles de revisión judicial, consignaron a nombre de la Secretaría del foro primario la suma de nueve mil dólares ($9,000.00) mediante un cheque.

Así las cosas, el 22 de agosto de 2025, los Peticionarios presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

> El TPI erró y abusó de su discreción al imponer una sanción económica pese a que PR Recovery cumplió con tal Orden y al dejar al arbitrio de la parte adversa la cuantía final de dicha sanción

> Erró el TPI al imponer una sanción económica de $9,000 que, además de ser irrazonable, arbitraria y punitiva, no guarda proporcionalidad alguna con la conducta sancionada.

El 27 de agosto de 2025, esta Curia emitió *Resolución* en la cual se le concedió hasta el 2 de septiembre de 2025 a la parte Recurrida para que mostrara causa por la cual no se debía expedir el auto de *certiorari*. Vencido dicho término sin que la parte Recurrida compareciera, el 4 de septiembre de 2025, se le concedió un término adicional de tres (3) días para que el Banco presentara su escrito. En cumplimiento con nuestra orden, el 10 de septiembre de 2025, la parte Recurrida compareció mediante escrito intitulado *Moción en Cumplimiento de Orden*. Con el beneficio de la comparecencia de ambas partes, procedemos a exponer la normativa jurídica aplicable a la controversia objeto del recurso de epígrafe.

## II.
### A. Certiorari

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.*, 203 DPR 708, 718 (2019). El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior. *Rivera et al. v. Arcos Dorados*

*et al.,* 212 DPR 194, 207 (2023).  Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, establece que el recurso de *certiorari* solo se expedirá cuando se recurra de (1) una resolución u orden sobre remedios provisionales o *injunction* o (2) la denegatoria de una moción de carácter dispositivo.    Por excepción, se puede recurrir también de: (1) decisiones sobre la admisibilidad de testigos o peritos; (2) asuntos de privilegios; (3) anotaciones de rebeldía; (4) en casos de relaciones de familia, o (5) en casos que revistan interés público. *Íd.* De igual manera, puede revisarse "cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia". *Íd.* Los límites a la facultad revisora del foro apelativo tienen como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación. *Scotiabank v. ZAF Corp. et al.*, 202 DPR 478, 486-487 (2019).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023).  La Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025), señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari.  Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 712 (2019). No obstante, "[a]l denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión". 32 LPRA Ap. V, R. 52.1.

### B. Manejo del Caso

El efectivo funcionamiento de nuestro sistema judicial, y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. *BPPR v. SLG Gómez-López*, 213 DPR 314, 333-334 (2023) citando a *In re Collazo I*, 159 DPR 141, 150 (2003). Es por ello, que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. *Íd.*

Cónsono con lo anterior el Tribunal de Primera Instancia tiene el deber ineludible de garantizar que los procedimientos se ventilen sin demora, con miras a que se logre una justicia rápida y eficiente. *In re Pagani Padró*, 181 DPR 517, 529 (2011). Como regla general, los foros revisores no intervendrán con el manejo del caso ante la consideración del foro primario. Siendo así, el Tribunal Supremo ha manifestado, que los tribunales apelativos no deben intervenir con determinaciones emitidas por el foro primario y sustituir el criterio utilizado por dicho foro en el ejercicio de su discreción, salvo que se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto.

*Citibank et al. v. ACBI et al.*, 200 DPR 724, 736 (2018). El ejercicio adecuado de la discreción judicial se relaciona de manera estrecha con el concepto de razonabilidad. *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

### III.

Tras haber expuesto el marco jurídico y ponderados los argumentos presentados por los Peticionarios, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción no intervendremos en la determinación recurrida emitida por el foro primario como parte del manejo del caso ante su consideración. En el presente caso, el foro primario emitió una determinación discrecional y en ausencia de abuso de discreción, este foro no debe intervenir con las determinaciones del foro *a quo.*

### IV.

Por los fundamentos expuestos, **denegamos** la expedición del auto de *Certiorari.*

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones